[No. S139917. Apr. 12, 2007.]

PROFESSIONAL ENGINEERS IN CALIFORNIA GOVERNMENT et al., Plaintiffs and Appellants, v.
WILL KEMPTON, as Director, etc., et al., Defendants and Respondents, CALTROP ENGINEERING CORPORATION et al., Interveners and Respondents.

1020

## COUNSEL

Law Office of Kelley Stimpel Martinez, Kelley Stimpel Martinez; Law Offices of James E. McGlamery and James E. McGlamery for Plaintiffs and Appellants.

David L. Alexander and Christopher H. Alonzi for City of Oakland, acting by and through its Board of Port Commissioners as Amicus Curiae on behalf of Plaintiffs and Appellants.

Davis & Reno and Duane W. Reno for Local 21 of the International Federation of Professional and Technical Engineers, AFL-CIO, as Amicus Curiae on behalf of Plaintiffs and Appellants.

Olson, Hagel & Fishburn, Deborah B. Caplan, N. Eugene Hill and Richard C. Miadich for the President of the State Senate, Don Perata, and the Speaker of the State Assembly, Fabian Núñez, as Amici Curiae on behalf of Plaintiffs and Appellants.

Bruce A. Behrens, Thomas C. Fellenz, Brelend C. Gowan, José Aguirre, Stephanie G. Sakai and Laurie Epstein-Terris for Defendants and Respondents.

John P. Carpenter for The Associated General Contractors of California as Amicus Curiae on behalf of Defendants and Respondents.

Best Best & Krieger, Steven C. Debaun, Marc S. Ehrlich and Robert Abiri for Amador County Transportation Authority as Amici Curiae on behalf of Defendants and Respondents.

Stoel Rives, James P. Corn and Barbara A. Brenner for Interveners and Respondents.

Sheppard, Mullin, Richter & Hampton and David P. Lanferman for the California Building Industry Association and California Chamber of Commerce as Amici Curiae on behalf of Defendants and Respondents and Interveners and Respondents.

Nossaman, Guthner, Knox & Elliott, Stephen N. Roberts, Stanley S. Taylor and Katrina J. Lee for Self-Help Counties Coalition and Contra Costa Transportation Authority as Amici Curiae on behalf of Defendants and Respondents and Interveners and Respondents.

Fred J. Hiestand for The Civil Justice Association of California as Amicus Curiae on behalf of Interveners and Respondents.

**OPINION**

**MORENO, J.**—Proposition 35, enacted by the electorate on November 7, 2000, expressly removed a constitutional restriction on the ability of governmental entities to contract with private firms for architectural and engineering services on public works projects. However, the measure was silent as to the status of certain statutory regulations on private contracting that were derived from the constitutional restriction. After the passage of Proposition 35, the state Department of Transportation (Caltrans) took the position that the initiative had impliedly repealed those regulatory statutes and ceased complying with them. However, Caltrans continued to use a pre-Proposition-35 statutory procedure for selecting architectural and engineering contractors. In the writ proceeding below, brought by a state employees' union and a taxpayer challenging Caltrans's interpretation of Proposition 35, Caltrans prevailed and the Court of Appeal affirmed judgment in its favor.

Here we decide two issues: (1) did Proposition 35 implicitly repeal the prior statutes regulating private contracting for architectural and engineering services by government agencies, and (2) did the passage of Proposition 35 invalidate or require modification of the pre-Proposition-35 statutory procedure for selecting private architectural and engineering firms. We conclude that Proposition 35 did implicitly repeal the prior statutes regulating private contracting, but did not invalidate the prior procedure for selecting private contractors. The further question of whether some modification of that procedure is required by Proposition 35 is not yet ripe for adjudication in the absence of legislative action on that issue. Accordingly, we affirm the judgment of the Court of Appeal.

## I. STATEMENT OF THE CASE

### A. *Proposition 35*

Entitled the Fair Competition and Taxpayer Savings Act, Proposition 35 was passed by the electorate on November 7, 2000.[1] The initiative added article XXII to the state Constitution and chapter 10.1, commencing with section 4529.10, to the Government Code.[2] It also contained a statement of purpose and intent, a provision for legislative amendment of the initiative, and a provision addressing the possibility of a conflicting initiative on the same subject.

The purpose and intent of Proposition 35 were set forth in section 2. These include "remov[ing] existing restrictions on contracting for architectural and engineering services and [allowing] state, regional and local governments to use qualified private architectural and engineering firms to help deliver transportation, schools, water, seismic retrofit and other infrastructure projects safely, cost effectively and on time"; "encourag[ing] the kind of public/private partnerships necessary to ensure that California taxpayers benefit from the use of private sector experts to deliver transportation, schools, water, seismic retrofit and other infrastructure projects"; "promot-[ing] fair competition so that both public and private sector architects and engineers work smarter, more efficiently and ultimately deliver better value to taxpayers"; "speed[ing] the completion of a multi-billion dollar backlog of highway, bridge, transit and other projects"; "ensur[ing] that contracting for architectural and engineering services occurs through a fair, competitive selection process, free of undue political influence, to obtain the best quality and value for California taxpayers"; and "ensur[ing] that private firms contracting for architectural and engineering services with governmental

---

[1] The initiative and ballot pamphlet materials are attached as an appendix.

[2] All further statutory references are to the Government Code unless otherwise specified.

entities meet established design and construction standards and comply with standard accounting practice and permit financial and performance audits as necessary to ensure contract services are delivered within the agreed schedule and budget." (Voter Information Guide, Gen. Elec. (Nov. 7, 2000) text of Prop. 35, § 2, p. 65, also reprinted in 32A West's Ann. Gov. Code (2007 supp.) foll. § 4529, p. 32; see appen., *post*, at p. 1053.)

The new constitutional provision, article XXII, section 1, granted to "[t]he State of California and all other governmental entities, including, but not limited to, cities, counties, cities and counties, school districts and other special districts, local and regional agencies and joint power agencies" the "choice and authority" to "contract with qualified private entities for architectural and engineering services for all public works of improvement." Section 2 eliminated restrictions on the authority of these governmental entities to enter into such contracts that had been imposed by judicial construction of article VII of the state Constitution, which established the state's merit-based civil service. (Cal. Const., art. XXII, § 2; see *Professional Engineers v. Department of Transportation* (1997) 15 Cal.4th 543 [63 Cal.Rptr.2d 467, 936 P.2d 473].)

Among the relevant provisions of the newly added chapter 10.1 of the Government Code, section 4529.10 defines " 'architectural and engineering services.' " Section 4529.11 specifies that "[a]ll projects included in the State Transportation Improvement Program programmed and funded as interregional improvements or as regional improvements shall be subject to Article XXII of the California Constitution." Section 4529.12 provides: "All architectural and engineering services shall be procured pursuant to a fair, competitive selection process which prohibits governmental agency employees from participating in the selection process when they have a financial or business relationship with any private entity seeking the contract, and the procedure shall require compliance with all laws regarding political contributions, conflicts of interest or unlawful activities." Section 4529.16 provides: "This act shall not be applied in a manner that will result in the loss of federal funding to any governmental entity." Section 4529.18 states: "If any action of the Legislature conflicts with the provisions of this act, this act shall prevail." Section 4529.19 provides: "This act shall be liberally construed to accomplish its purposes." Section 4529.20 provides: "This act seeks to comprehensively regulate the matters which are contained within its provisions. These are matters of statewide concern and when enacted are intended to apply to charter cities as well as all other governmental entities."

Section 5 of the initiative specified: "This initiative may be amended to further its purposes by statute, passed in each house by roll call vote entered in the journal, two-thirds of the membership concurring, and signed by the

Governor." (Voter Information Guide, Gen. Elec. (Nov. 7, 2000) text of Prop. 35, § 5, p. 66; see appen., *post*, at p. 1055.)

### B. *Proceedings in the Trial Court*

On November 21, 2000, Professional Engineers in California Government, which identified itself as "the duly certified collective bargaining representative for members of state employee Bargaining Unit No. 9," and Dennis Alexander, a taxpayer (collectively Professional Engineers), filed a petition for writ of mandate in the San Francisco Superior Court. Named as respondents were Jeff Morales, then Director of Caltrans (the present Director of Caltrans, Will Kempton, was appointed in 2004); Caltrans; Maria Contreras-Sweet, then Secretary of the California Business, Transportation and Housing Agency; and the Business, Transportation and Housing Agency (collectively Caltrans).

The petition's general allegations described the pre-Proposition-35 state of the law with respect to private contracting by public agencies. Under the prior statutory scheme, the law pertaining to when "the State of California could contract out architectural and engineering services for [public works] projects [was] found in Article VII of the California Constitution, decisional law, and statutes. Those laws authorized the State of California to contract out architectural and engineering services when, for example, the contract is for a new state function, the services are not available within civil service, cannot be performed satisfactorily by civil service employees, or are of such a highly specialized or technical nature that necessary expert knowledge, experience, and ability are not available through the civil service system. (Gov. Code, § 19130(b).) [¶] . . . The State of California also granted to Caltrans specifically, authority to contract out architectural and engineering services when, for example, obtainable staff is unable to perform the particular work within the time the public interest requires such work to be done, and when Caltrans is inadequately staffed to satisfactorily carry out its program of project study reports, project development, surveying, and construction inspection in a timely and effective manner. (Government Code §§ 14101, 14130.)"

The general allegations also described the pre-Proposition-35 selection procedure by which private entities were awarded contracts for architectural and engineering services. "[T]he State of California awarded contracts to private firms for architectural and engineering services . . . pursuant to a method called the 'qualifications based selection process' (QBS), which is codified in Government Code § 4525, et seq. The QBS method prohibits competitive bidding and requires selection based on factors that do not include cost considerations."

According to the allegations of the petition, the effect of Proposition 35 was to authorize " 'the State of California' . . . to choose 'when' to contract for architectural and engineering services," but this reference to the "State of California" was to "the Governor and the Legislature. Since the passage of Proposition 35, neither the Governor nor the Legislature have chosen to authorize any new or different circumstances under which Caltrans may contract out architectural and engineering services other than those found in Government Code §§ 14101, 14130 and 19130, which existed prior to the passage of Proposition 35. [¶] . . . Proposition 35 did not expressly or impliedly repeal Government Code §§ 14101, 14130, 19130, or 14520.3."

However, the petition alleged that Proposition 35's mandate that contracts for architectural and engineering services be awarded pursuant to a "fair, competitive selection" process "require[d] calculation and comparison of the costs between private firms, and the costs of using a private firm against the costs of using civil service employees to perform the same work" and thus effectively repealed the quality-based selection process.

The petition alleged 10 causes of action. The first cause of action was captioned "The QBS Process Violates Proposition 35." It alleged that the use of the qualification-based selection (QBS) process violated Proposition 35's mandate of a fair competitive bidding process because the QBS process did not permit competitive bidding or require cost comparisons before awarding contracts. The second cause of action was captioned "Until New Law Is Created, Caltrans May Only Contract Out Under Government Code §§ 14101, 14130 and 19130." It alleged that Caltrans had "awarded contracts that are not authorized under these statutes."[3] Professional Engineers sought declaratory and injunctive relief.

On December 12, 2002, the superior court granted the motion to intervene in the action made by Caltrop Engineering Corporation, CH2M Hill, DMJM + Harris, Harris & Associates, Inc., Kleinfelder, Inc., Lim & Nascimento Engineering Corporation, Parsons Brinckerhoff Quade & Douglas, Inc., Psomas, Trauner Consulting Services, Inc., Vali Copper & Associates, Inc., and Consulting Engineers and Land Surveyors of California (collectively Caltrop). The complaint in intervention identified these entities as firms that had either executed consulting contracts with Caltrans or, in the case of Kleinfelder, Inc., were a party to subconsultant contracts with firms that had contracted directly with Caltrans. Additionally, Consulting Engineers and Land Surveyors of California was identified as a nonprofit corporation that

---

[3] The remaining causes of action are not relevant to our discussion.

served as a professional association of consulting engineers and land surveying firms that regularly contracted with Caltrans. The association and its members had been actively involved in the drafting, initiation and passage of Proposition 35.

On November 17, 2003, Caltrans filed an answer to the petition. Caltrans admitted "that since passage of Proposition 35 . . . it has contracted with private firms for architectural and engineering services without justifying such contracting on superseded statutory authority under Government Code sections 14101, 14130 and 19130." As an affirmative defense, Caltrans alleged that Professional Engineers had failed to state a cause of action with respect to either the first or second causes of action. Caltrans alleged: "1. [Professional Engineers's] First Cause of Action fails to state a cause of action, because the qualifications-based selection process does not violate Proposition 35. [¶] 2. [Professional Engineers's] Second Cause of Action fails to state a cause of action, because constitutional provisions of Proposition 35 are self-executing and no new law is required before it may be implemented. Further, that Government Code sections 14101, 14130, and 19130 have been superseded by the enactment of Proposition 35." Caltrop's answer, filed the same day, mirrored Caltrans's answer.

On June 28, 2004, Caltrans filed its opposition to the petition. Caltrans argued that the explicit purpose of Proposition 35 was to remove limitations on a state agency's authority to contract out architectural and engineering services that had been imposed through judicial interpretation of article VII of the state Constitution. Citing both the language of the initiative and the ballot arguments, Caltrans contended "Article XXII effectively removed all Article VII limitations on [Caltrans's] authority to contract for A&E services, which had been set forth in such statutes as Government Code sections, 14101, 14130 and 19130 . . . . With the passage of Proposition 35, the State was authorized to exercise contracting authority for A&E services free from any Article VII restrictions."

On the other hand, Caltrans maintained that Proposition 35 did not require it to abandon the QBS procedure for selecting contractors. Caltrans disputed Professional Engineers's claim that cost savings was the primary goal of Proposition 35. "Although the preamble mentions 'taxpayers savings,' 'taxpayers benefit,' 'fair competition' and 'value,' these words and phrases cannot be interpreted as referring only to cost . . . . [¶] . . . [¶] By definition, cost may be <u>one</u> measure of value, but there are other measures that the voters considered equally or more important, such as expedited delivery of transportation projects, completion of the seismic retrofitting of bridges and elimination of a backlog of public works projects."

Caltrans noted that federal law requires the state to award federally assisted architectural and engineering contracts based on the QBS procedure or suffer loss of federal funds. "The State's QBS process set forth in the Government Code section 4525 et seq. is equivalent to the [federal] 'Brooks Act' process and so satisfies the federal requirement. Approximately 84% of the A&E contracts awarded by [Caltrans] are federal-aid contracts and are required by federal law to be procured pursuant to a QBS process." As Caltrans further observed: "Since Proposition 35 requires the act to be implemented in a way that avoids the loss of federal funds, the QBS competitive selection process currently employed by the state is the only selection process the state can use to procure A&E services."

Caltrans also argued that Proposition 35 was self-executing, rejecting Professional Engineers's position that it required further legislation to be implemented. "Constitutional provisions are self-implementing and require no action by the legislature to take effect unless such requirement plainly appears on the face of the Act . . . . Because Proposition 35 contains no directive to the Legislature to implement Article XXII, the presumption that the provision is self-executing prevails." Thus, in Caltrans's view, no further legislation or administrative regulations were required to implement Proposition 35's requirement of a "fair, competitive selection process" because the QBS procedure met that requirement. Caltrop's opposition to the petition for writ of mandate advanced similar arguments.

In reply, Professional Engineers argued that Proposition 35 did not repeal preexisting statutes governing private contracting because the initiative was not self-executing, but required implementation through the legislative process. Professional Engineers argued that, if preexisting statutes were deemed to be implicitly repealed, Caltrans would have no statutory authority at all for contracting out architectural and engineering services because new statutes had not yet been enacted. On the QBS issue, Professional Engineers argued that Proposition 35's cost-saving mandate required "a new and different selection process sharply focused on cost competition among consultants and between consultants and the state."

On October 28, 2004, the trial court issued an order denying the petition. After entry of judgment for Caltrans, Professional Engineers appealed.

C. *The Court of Appeal Opinion*

The Court of Appeal affirmed the judgment in part and reversed it in part. In the published portion of its opinion, the court rejected Professional Engineers's argument that Proposition 35 "simply lifted the restrictions of Article VII on the Legislature's power to authorize private contracting of

architectural and engineering services on public works" and that "[u]nless and until the Legislature amends or repeals the pre-Proposition 35 statutes that govern private contracting, those statutes remain in effect and are binding on state agencies." It also rejected Professional Engineers's argument that Proposition 35 invalidated the QBS process set forth in sections 4525 to 4529.5.

The Court of Appeal acknowledged that Proposition 35 did not expressly repeal existing statutory restrictions on private contracting and that repeals by implication are disfavored. Nonetheless, the court concluded that Proposition 35 implicitly repealed those statutes. In support of this conclusion, the court cited provisions of the initiative that it deemed irreconcilable with the pre-Proposition-35 regulatory statutes. Those provisions included Proposition 35's express intent to comprehensively regulate the subject of private contracting and to remove article VII restrictions; the requirement of liberal construction of its provisions to accomplish its purpose; and the restricted power granted to the Legislature to amend the initiative to further its purpose. "Collectively, these provisions compel the conclusion that Proposition 35 effected an implied repeal or amendment of existing statutes to the extent that they limit Caltrans's ability to hire private contractors to perform architectural and engineering services beyond the limitations of Proposition 35."

Turning to the specific statutes, sections 14101, 14130 to 14137, and 19130, the Court of Appeal noted that "[b]ecause the pre-Proposition 35 statutory restrictions mirror the restrictions imposed by article VII, which were expressly removed by California Constitution article XXII, the initiative would have no immediate practical effect if those statutory restrictions remained in force."

The Court of Appeal then addressed the contention of Professional Engineers that Caltrans had no power to contract with private firms unless authorized by specific legislation. The Court of Appeal held that article XXII was self-executing and did not require implementing legislation. The court then found that Caltrans's broad statutory authority to plan, design, and construct transportation systems found in section 14030, subdivision (d), provided Caltrans with the authority it needed to contract out architectural and engineering services under the constitutional and statutory scheme adopted by Proposition 35.

Finally, the Court of Appeal addressed Professional Engineers's argument that article XXII removed a restriction on legislative power, and therefore must be liberally construed in favor of the Legislature's power to act in the field of private contracting. The court responded: "[Professional Engineers's]

analysis might be persuasive if article XXII had been adopted in isolation, but the article was adopted as part of an act and must be construed in context. Other parts of the act provide that it must be liberally construed to accomplish its purposes, which include removal of existing restrictions on private contracting, and the initiative explicitly restricts the Legislature's prospective power to regulate private contracting. (§ 4529.19; Prop. 35, §§ 2, 5.) Article XXII authorizes private contracting by the State of California 'and all other governmental entities,' which includes both local governments (cities and counties) and local agencies. (Cal. Const., art. XXII, § 1.) We construe article XXII to affirmatively authorize state agencies to contract with private entities for architectural and engineering services. (Prop. 35, § 5.)"

The Court of Appeal then addressed Professional Engineers' claim that Proposition 35 had invalidated the QBS procedure set forth in sections 4525 to 4529.5. The court found no inconsistency between Proposition 35's requirement of a "fair competitive selection process" and the QBS procedure. First, it observed that the QBS procedure was a qualification-based competitive procedure that included a cost component. Second, the Court of Appeal noted that Proposition 35 required that the initiative not be applied in a manner that would result in the loss of federal funding and, because federal law required the use of a QBS procedure, "[a]t a minimum, as to federally funded projects, section 4529.16 compels a construction of section 4529.12 that allows the use of qualification-based selection procedure." The court noted about 84 percent of Caltrans's contracts were subject to the federal requirement.

The Court of Appeal concluded that the use of the QBS procedure did not conflict with Proposition 35's statement of purpose and intent, notwithstanding language in the statement and title referring to cost effectiveness and taxpayer savings. The court pointed to statements in the ballot pamphlet materials advising voters that private contracting might result in higher costs but would also accrue other benefits. Additionally, "the official summary clearly states that competitive bidding on the contracts (the prevailing method of public contractor selection that gives prominent weight to cost) is permitted but not required under Proposition 35."

Accordingly, the Court of Appeal affirmed the trial court's judgment insofar as it involved these claims.[4]

We granted Professional Engineers' petition for review.

---

[4] In the unpublished portion of its opinion, the Court of Appeal reversed the judgment insofar as it agreed with Professional Engineers that certain regulations used by Caltrans in awarding architectural and engineering contracts were not promulgated in accordance with the Administrative Procedure Act. (§ 11340 et seq.) That issue is not before us.

## II. ANALYSIS

### A. *The Standard of Review*

This case comes to us as a denial of a petition for writ of mandate. "Although an appellate court defers to a trial court's factual determinations if supported by substantial evidence," where, as here, "the trial court's decision did not turn on any disputed facts," the trial court's decision "is subject to de novo review." (*Kavanaugh v. West Sonoma County Union High School Dist.* (2003) 29 Cal.4th 911, 916 [129 Cal.Rptr.2d 811, 62 P.3d 54]; see *Gilbert v. City of Sunnyvale* (2005) 130 Cal.App.4th 1264, 1275 [31 Cal.Rptr.3d 297] ["In resolving questions of law on appeal from a denial of a writ of mandate, an appellate court exercises its independent judgment"].) The issues before us present questions of law and review is de novo.

### B. *Background*

#### 1. *Article VII Restrictions on Private Contracting*

■ "Article VII of the California Constitution establishes a system of civil service employment for state government: 'The civil service includes every officer and employee of the State except as otherwise provided in this Constitution.' (Cal. Const., art. VII, § 1, subd. (a).) The hallmark of our civil service system is that appointments and promotions are based on merit ascertained by competitive examination. (Art. VII, § 1, subd. (b).) [¶] The purposes of article VII as disclosed in the ballot argument of its predecessor provision are twofold: (1) to encourage efficiency and economy in state government, and (2) to eliminate the 'spoils system' of political patronage by ensuring that demonstrated fitness—rather than political considerations—spurs all appointments to public service." (*Professional Engineers v. Department of Transportation* (1993) 13 Cal.App.4th 585, 592 [16 Cal.Rptr.2d 599], fn. omitted.)

While article VII does not expressly prohibit the use of private contractors to perform state functions, judicial construction of this provision has long held that a restriction upon the use of such private contractors is necessary to fulfill its purposes. " 'Were the rule otherwise, the civil service system could be entirely undone by a system of contracting; and the state's work force could be dominated by independent contractors who would be hired from job to job.' Such a system, operating without regard to considerations of economy or efficiency, and open to a 'patronage/spoils system' method of contracting, would conflict with the electorate's probable intent in adopting article VII and its predecessor." (*Professional Engineers v. Department of Transportation, supra,* 15 Cal.4th at p. 564; see *California State Employees' Assn. v. Williams*

(1970) 7 Cal.App.3d 390, 397 [86 Cal.Rptr. 305] ["The restriction on 'contracting out' " "emanates from an implicit necessity for protecting the policy of the organic civil service mandate against dissolution and destruction"].)

■ Decisional law construed article VII as a restriction, but not a total prohibition, against private contracting by public agencies, and developed three exceptions. The first, called the "nature of the services" rule, was explicated in *State Compensation Ins. Fund v. Riley* (1937) 9 Cal.2d 126 [69 P.2d 985]. In *Riley*, we held that the employment of an outside attorney by the State Compensation Insurance Fund, which had its own in-house attorneys, violated article XXIV of the California Constitution, the predecessor provision to article VII. We observed: "There undoubtedly is a field in which state agencies may enter into contracts with independent contractors. But the true test is not whether the person is an 'independent contractor' or an 'employee', but whether the services contracted for, whether temporary or permanent, are of such a nature that they could be performed by one selected under the provisions of [the] civil service. If the services could be so performed then in our opinion it is mandatory upon such appointing power to proceed in accordance with the provisions of the Constitution and statute above summarized." (*Riley*, at p. 135.) "[I]f the services cannot be adequately rendered by an existing agency of the public entity . . . the contract is permissible." (*California State Employees' Assn. v. Williams, supra*, 7 Cal.App.3d at p. 397.)

The second exception to article VII's restriction on contracting out government functions to private entities is termed the "new state function" rule. "[T]he restriction is inapplicable if the state seeks to contract for private assistance to perform *new functions* not previously undertaken by the state or covered by an existing department or agency." (*Professional Engineers v. Department of Transportation, supra*, 15 Cal.4th at p. 549; see *California State Employees' Assn. v. Williams, supra*, 7 Cal.App.3d at p. 399 ["the state civil service suffers no displacement and the underlying constitutional policy is not offended when a new state activity is conducted by contract with a separate public or private entity"].)

The third exception to article VII is referred to as the "cost savings exception." In *California State Employees' Assn. v. State of California* (1982) 199 Cal.App.3d 840 [245 Cal.Rptr. 232], the Court of Appeal upheld section 19130, which, under specified conditions, allows the state to contract with private entities to perform personal services to achieve cost savings, against a claim that the statute violated article VII. Discussing that holding in our 1997 *Professional Engineers* opinion, we explained that the savings objective of section 19130 was permissible if, pursuant to the statute, the state "can

achieve these savings without ignoring other applicable civil service require-ments (e.g., use of publicized, competitive bidding, no undercutting of state pay rates, no displacement of state workers or infringement of affirmative action plans, and no overriding public interest in having the state perform the function)." (*Professional Engineers v. Department of Transportation, supra*, 15 Cal.4th at p. 549.)

These exceptions to article VII, derived from its restriction on private contracting, defined the scope of the Legislature's statutory efforts to permit some contracting out of government functions prior to the enactment of Proposition 35. This is plainly true of the statutes involved in this matter, sections 14101, 14130 et seq., and 19130, all of which incorporate those exceptions.

Under section 14101, Caltrans "shall contract with qualified architects and engineers for the performance of work when it is determined by the Director of Transportation, with the approval of the Director of Finance, that the obtainable staff is unable to perform the particular work within the time the public interest requires such work to be done." Thus, this authorization includes a condition that conforms to the nature of the services exception. Similarly, section 14130 expresses the Legislature's intent that Caltrans "contract for the services of engineers, [and] architects, . . . whenever the department is inadequately staffed to satisfactorily carry out its program of project study reports, project development, surveying, and construction in-spection in a timely and effective matter." (§ 14130, subd. (b); see also § 14131 ["Services contracted for shall not cause the displacement of any permanent, temporary, or part-time employee of the department"].) "These sections appear consistent with decisional law interpreting article VII." (*Professional Engineers v. Department of Transportation, supra*, 15 Cal.4th at p. 551.)

This is also true of section 19130, which authorizes state agencies to enter into personal service contracts with outside entities to achieve costs savings but only if one of two conditions is met. Either "[t]he contract is for a new state function and the Legislature has specifically mandated or authorized the performance of the work by independent contractors" (§ 19130, subd. (b)(2)), or "[t]he services contracted are not available within civil service, cannot be performed satisfactorily by civil service employees, or are of such a highly specialized or technical nature that the necessary expert knowledge, experi-ence, and ability are not available through the civil service system." (§ 19130, subd. (b)(3); see *Professional Engineers v. Department of Transportation, supra*, 13 Cal.App.4th at p. 594 [noting § 19130, subd. (b)(2) is "a codifica-tion of the 'new state function' test"].)

2. *Our 1997* Professional Engineers *Decision*

Our decision in *Professional Engineers v. Department of Transportation, supra*, 15 Cal.4th at p. 585, provides a further indication that pre-Proposition-35 statutes regulating private contracting were constrained by article VII limitations. In *Professional Engineers*, we declined to overrule the decisional law that had inferred article VII's restriction on private contracting, and rejected legislative attempts to expand Caltrans's authority to contract with private entities for architectural and engineering services beyond the limits permitted by the exceptions to article VII.

*Professional Engineers* had its genesis in a 1986 lawsuit brought by Professional Engineers to enjoin Caltrans from contracting with private entities to carry out state highway projects traditionally performed by civil service employees. The 1986 litigation resulted in a permanent injunction, issued in 1990, "prohibiting Caltrans from (1) contracting privately for engineering and inspection services for highway projects unless the work was to be performed in compliance with the then existing criteria set forth in section 14101 and former section 14130 et seq.; (2) entering into cooperative agreements with local entities when private entities were to perform part or all of the work; and (3) awarding contracts to private entities for construction survey staking." (*Professional Engineers v. Department of Transportation, supra*, 15 Cal.4th at p. 554.)

In response to the injunction, the Legislature adopted chapter 433. (Stats. 1993, ch. 433, p. 2448.) Chapter 433 amended section 14130 in order "(1) to allow Caltrans 'continued flexibility' to contract privately as needed to assure timely delivery of its projects; and (2) to afford 'a new and independent basis upon which to justify contracting out actions.' " (*Professional Engineers v. Department of Transportation, supra*, 15 Cal.4th at p. 552.) Among its provisions, the amendment to section 14130 stated that the use of private consultants was necessary to increase Caltrans's project delivery on state highway construction projects; that its use of consultants to assist project delivery was a new state function; and that Caltrans was not required to use existing state employees or hire new staff to meet the goals set forth in the chapter. (15 Cal.4th at pp. 552–553.)

Following the enactment of chapter 433, Caltrans sought to dissolve the 1990 injunction barring its use of private contractors except as permitted by established exceptions to article VII. The trial court declined to do so. It "concluded that Chapter 433's legislative findings and directives are 'obviously erroneous, unreasonable and inconsistent with the constitutional civil service mandate,' and for that reason the provisions are unconstitutional to the extent they purport to authorize Caltrans to contract privately without a

factual showing that the contract is permissible under applicable constitutional principles." (*Professional Engineers v. Department of Transportation, supra*, 15 Cal.4th at p. 557.) A divided Court of Appeal disagreed and remanded the matter to the trial court with directions to dissolve the injunction. We granted review.

Caltrans asked us to overrule the body of decisional law originating with *State Compensation Ins. Fund v. Riley, supra*, 9 Cal.2d 126, that had construed article VII as a restriction on private contracting and developed the exceptions to the restriction. Caltrans argued that ballot arguments made in connection with the predecessor provision to article VII demonstrated that the provision was only intended to implement merit as the basis of appointments and promotion in state service, but was silent on the issue of outside contracting. We declined to disapprove this body of law. "As an analytical matter, *Riley*'s rule seems appropriate to assure that the state civil service is not neglected, diminished, or destroyed through routine appointments to 'independent contractors' made solely on the basis of political considerations or cronyism." (*Professional Engineers v. Department of Transportation, supra*, 15 Cal.4th at pp. 563–564.) Furthermore, "even assuming for the sake of argument that *Riley*'s constitutional interpretation was originally flawed, under settled rules of construction we must presume that *Riley*'s interpretation was preserved and reincorporated into the Constitution on two subsequent occasions when (1) in 1970, the voters reenacted an amended version of former article XXIV pursuant to the recommendation of the California Constitution Revision Commission, and (2) in 1976, the voters adopted the substance of former article XXIV as new article VII." (*Id.*, at p. 564.) Addressing Caltrans's various policy reasons for urging this court to overrule the case law at issue, we observed that "although these reasons, if factually based, might support a constitutional amendment to clarify, or indeed abrogate, the private contracting restriction, they offer no solid ground for ignoring traditional principles of stare decisis." (*Id.*, at p. 566.)

We then turned to the question of whether chapter 433 "affords an independent basis for overturning the trial court's injunction and enforcement orders." (*Professional Engineers v. Department of Transportation, supra*, 15 Cal.4th at p. 568.) In answering this question we observed that "[m]ost provisions of Chapter 433 appear intended to dispense with, rather than to satisfy, the constitutional civil service mandate." (*Id.*, at p. 570.) We observed that certain new subdivisions of the amended version of section 14130 that conflicted with the civil service mandate were unsupported by express or implied findings or by any evidentiary support. (15 Cal.4th at p. 568.) Therefore, "[w]e conclude[d] that Chapter 433 contains no express or implied findings sufficient on their face to justify dissolving the trial court's injunction. To the extent Chapter 433's provisions conflict with the civil service mandate, they are invalid." (*Id.*, at p. 572.)

■ Proposition 35 expressly removed all article VII restrictions on the ability of government entities to contract out for architectural and engineering services. We turn now to the question of whether Proposition 35 also impliedly repealed statutes regulating private contracting that were enacted with the article VII restrictions in mind, particularly sections 14101, 14130 et seq., and 19130.

### C. *Implied Repeal of Pre-Proposition-35 Statutes Regulating Private Contracting*

■ In construing the constitutional and statutory provisions added to the state Constitution and the Government Code by Proposition 35, we apply the same interpretive principles to each. "The principles of constitutional interpretation are similar to those governing statutory construction. In interpreting a constitution's provision, our paramount task is to ascertain the intent of those who enacted it. [Citation.] To determine that intent, we 'look first to the language of the constitutional text, giving the words their ordinary meaning.' [Citation.] If the language is clear, there is no need for construction. [Citation.] If the language is ambiguous, however, we consider extrinsic evidence of the enacting body's intent." (*Thompson v. Department of Corrections* (2001) 25 Cal.4th 117, 122 [105 Cal.Rptr.2d 46, 18 P.3d 1198].)

■ Similarly, "[i]n interpreting a voter initiative . . . , we apply the same principles that govern statutory construction. [Citation. ] Thus, 'we turn first to the language of the [initiative], giving the words their ordinary meaning.' [Citation.] The [initiative's] language must also be construed in the context of the statute as a whole and the [initiative's] overall . . . scheme." (*People v. Rizo* (2000) 22 Cal.4th 681, 685 [94 Cal.Rptr.2d 375, 996 P.2d 27].) "Absent ambiguity, we presume that the voters intend the meaning apparent on the face of an initiative measure [citation] and the court may not add to the statute or rewrite it to conform to an assumed intent that is not apparent in its language." (*Lesher Communications, Inc. v. City of Walnut Creek* (1990) 52 Cal.3d 531, 543 [277 Cal.Rptr. 1, 802 P.2d 317].) Where there is ambiguity in the language of the measure, "[b]allot summaries and arguments may be considered when determining the voters' intent and understanding of a ballot measure." (*Legislature v. Deukmejian* (1983) 34 Cal.3d 658, 673, fn. 14 [194 Cal.Rptr. 781, 669 P.2d 17].)

■ The unambiguous intent of the electorate in adding article XXII to the state Constitution via Proposition 35 was to remove article VII's restriction on the use of private contractors by state agencies for architectural and engineering services: "Nothing contained in Article VII of this Constitution shall be construed to limit, restrict or prohibit the State or any other governmental entities, including, but not limited to, cities, counties, cities and

counties, school districts and other special districts, local and regional agencies and joint power agencies from contracting with private entities for the performance of architectural and engineering services." (Cal. Const., art. XXII, § 2.) Moreover, the initiative's statement of purpose and intent explicitly states that the removal of "existing restrictions on contracting for architectural and engineering services" is part of the intent of the electorate in enacting the initiative. (Voter Information Guide, Gen. Elec. (Nov. 7, 2000) text of Prop. 35, § 2, subd. (a), p. 65; see appen., *post*, at p. 1053.) Additionally, section 4529.11 makes it clear that the elimination of article VII restrictions on private contracting applies to transportation projects.[5]

■ While the initiative does not expressly repeal sections 14101, 14130 et seq., and 19130, we conclude that the constitutional and statutory provisions of the initiative, viewed in the context of the initiative as a whole, impliedly repeal these statutes. ■ Notwithstanding the "presumption against repeals by implication," repeal may be found where (1) "the two acts are so inconsistent that there is no possibility of concurrent operation," or (2) "the later provision gives undebatable evidence of an intent to supersede the earlier" provision. (*Hays v. Wood* (1979) 25 Cal.3d 772, 784 [160 Cal.Rptr. 102, 603 P.2d 19]; accord, *Chatsky & Associates v. Superior Court* (2004) 117 Cal.App.4th 873, 877 [12 Cal.Rptr.3d 154].) Because "the doctrine of implied repeal provides that the most recently enacted statute expresses the will of the Legislature" (*In re Thierry S.* (1977) 19 Cal.3d 727, 744 [139 Cal.Rptr. 708, 586 P.2d 610]), application of the doctrine is appropriate in those limited situations where it is necessary to effectuate the intent of drafters of the newly enacted statute. " 'In order for the second law to repeal or supersede the first, the former must constitute a revision of the entire subject, so that the court may say that it was intended to be a substitute for the first.' " (*Board of Supervisors v. Lonergan* (1980) 27 Cal.3d 855, 868 [167 Cal.Rptr. 820, 616 P.2d 802], quoting *Penziner v. West American Finance Co.* (1937) 10 Cal.2d 160, 176 [74 P.2d 252]; see also Sutherland, Statutory Construction (6th ed. 2002) § 23.9, p. 461 [Noting that courts "will infer the repeal of a statute only when . . . a subsequent act of the legislature clearly is intended to occupy the entire field covered by a prior enactment"].) ■ Finally, because the power to legislate is shared by the Legislature and the electorate through the initiative process (Cal. Const., art. IV, § 1), the principles

---

[5] That section provides that all projects in the State Transportation Improvement Program (STIP) are subject to article XXII, i.e., removal of article VII restrictions. (§ 4529.11.) As explained by the Legislative Analyst: "The STIP is the state's transportation plan that includes public works projects to increase the capacity of the state's highways and provide transit capital improvements (such as new freeways, new interchanges, and passenger rail rights-of-way). The STIP is the state's largest ongoing capital improvement program. Thus, the proposition would probably have the greatest impact in the transportation area." (Voter Information Guide, Gen. Elec. (Nov. 7, 2000) analysis of Prop. 35 by Legis. Analyst, p. 19; see appen., *post*, at p. 1058.)

governing repeals by implication where the statutory conflict is the result of enactments by the Legislature should also apply where, as here, the question is whether the provisions of an initiative impliedly repealed preexisting statutes.

The standards for analyzing whether a statute has been impliedly repealed by constitutional amendment or another statute are the same. (*Barratt American, Inc. v. City of San Diego* (2004) 117 Cal.App.4th 809, 817 [12 Cal.Rptr.3d 132] [" 'The same standards apply in determining whether a constitutional amendment impliedly repealed a statutory provision' "]; see *Martello v. Superior Court* (1927) 202 Cal. 400, 404 [261 P. 476] [statutes that were "verbatim repetition" (italics omitted) of a constitutional provision permitting stipulation to a judge pro tempore that was omitted by subsequent constitutional amendments were also impliedly repealed].)

■ When we examine the constitutional and statutory provisions of Proposition 35, in light of the initiative as a whole, we find that they demonstrate a clear intent by the electorate to supersede prior law, under which the ability of state agencies to contract with private entities for architectural and engineering services was limited by article VII and article-VII-derived statutory restrictions. Article XXII, section 1 grants to the "State of California and all other governmental agencies" the "choice and authority" to "contract with qualified private entities for architectural and engineering services." Article XXII, section 2 provides that "Nothing contained in Article VII of this Constitution shall be construed to limit, restrict or prohibit the State or any other governmental entities . . . from contracting with private entities for the performance of architectural and engineering services." (Cal. Const, art. XXII, § 2.) Although article XXII is silent as to the statutes at issue, other provisions of the initiative, including the statutory provisions, support a finding of implied repeal.

■ The statement of intent expresses the intention to eliminate "existing restrictions." (Voter Information Guide, Gen. Elec. (Nov. 7, 2000) text of Prop. 35, § 2, subd. (a), p. 65; see appen., *post*, at p. 1053.) The use of the plural "restriction*s*," combined with the absence of a specific reference to article VII, indicates an intention to remove all such restrictions, whether constitutional or statutory. (*People v. Rizo, supra*, 22 Cal.4th at p. 685 [in construing the language of an initiative, the reviewing court gives words their ordinary meaning].) Several of the statutory provisions added to the Government Code by the initiative also support the application of the doctrine of implied repeal. For example, section 4529.20 states that "[t]his act

seeks to *comprehensively* regulate the matters which are contained within its provisions." (Italics added.) Section 4529.19 provides that "[t]his act shall be liberally construed to accomplish its purposes." Notably, too, section 4529.18 provides that "[i]f any act of the Legislature conflicts with the provisions of this act, this act shall prevail." Finally, the initiative, while authorizing the Legislature to amend the initiative by statute restricts that power to such amendments as will "further its purposes." (Voter Information Guide, Gen. Elec. (Nov. 7, 2000) text of Prop. 35, § 5, p. 66; see appen., *post*, at p. 1055.)

Moreover, both the Attorney General's summary of Proposition 35 and the analysis of the measure by the Legislative Analyst put the electorate on notice that the measure was intended to repeal all article-VII-based restrictions on private contracting. The summary explained that a "yes" vote meant that "[t]he state could contract with private individuals or firms for architectural and engineering services in all situations rather than only under certain conditions (*such as when the work is of a temporary nature or of such a specialized nature that it cannot be provided by state employees.*)" (Voter Information Guide, Gen. Elec. (Nov. 7, 2000) ballot measure summary, Prop. 35, p. 2; see appen., *post*, at p. 1055, italics added.) The italicized language clearly alludes to such exceptions to article-VII-based restrictions as those found in sections 14101 ("obtainable staff is unable to perform the particular work within the time the public interest requires such work to be done"), 14130, subdivision (b) ("the department is inadequately staffed to satisfactorily carry out its program of project study reports, project development, surveying, and construction inspection in a timely and effective manner"), and 19130, subdivision (b)(3) ("[t]he services contracted . . . are of such a highly specialized or technical nature that the necessary expert knowledge, experience, and ability are not available through the civil service system"). Similarly, the Legislative Analyst's analysis of the measure summarized existing law by noting that private contracting was only permitted "if services needed by the state are: (1) of a temporary nature, (2) not available within the civil service, or (3) of a highly specialized or technical nature." (Voter Information Guide, Gen. Elec. (Nov. 7, 2000) analysis of Prop. 35 by Legis. Analyst, p. 19; see appen., *post*, at p. 1059.)

In summary, Proposition 35 authorizes public entities to contract for architectural and engineering services free of article VII restrictions and other existing restrictions; represents a comprehensive regulation of the entire subject of private contracting for those services; prevails over conflicting acts of the Legislature; must be construed liberally to achieve its goal of encouraging and authorizing private contracting of architectural and engineering

services; and permits only such statutory amendments by the Legislature as will further its purposes. Moreover, at the time the initiative was proposed, the voters were informed that enactment of Proposition 35 would eliminate both the article VII rule and its exceptions.

These provisions cannot be reconciled with the existing statutes that authorize private contracting by Caltrans of architectural and engineering services, subject to conditions derived from the exceptions to article VII's rule generally restricting such contracting. That rule has been abrogated by Proposition 35 and if the rule no longer has any force, neither should its exceptions. We therefore conclude that Proposition 35 impliedly repealed the particular statutes at issue here.[6]

Although Professional Engineers asserts that the pre-Proposition-35 statutes are consistent with Proposition 35, it does not specifically attempt to reconcile them. Rather, its chief argument is less about the fate of these particular statutes than the broader question of who has authority to regulate private contracting for architectural and engineering services by state agencies in the post-Proposition-35 landscape. Professional Engineers explains: "By enacting Proposition 35, the voters intended to expand the 'State of California's' power to choose when and how to contract out for [architectural and engineering] services. A primary issue before this Court is to whom the voters intended that expanded power to be given."

In the view of Professional Engineers, prior to the enactment of Proposition 35, the Legislature exercised plenary power in this area, subject to article VII restrictions on its authority. Therefore, "the elimination of the Article VII restriction on contracting is intended to **lift the restriction on the Legislature's power** to authorize individual state departments to contract out, thereby expanding the Legislature's power over authorizing [architectural and

---

[6] Professional Engineers contends that, even if Proposition 35 removed article VII restrictions on private contracting, Caltrans is still required to comply with sections 14520.3 and 14525, and to use its staff, rather than private contractors, to perform certain project components. This is because, Caltrans argues, these sections are not article VII restrictions. In an unpublished portion of its opinion, the Court of Appeal rejected this argument. The court observed: "Section 14520.3, which provides that Caltrans is the 'responsible agency for performing all state highway project components specified in subdivision (b) of Section 14529,' is a statement of legislative intent that also provides that nothing in the bill enacting section 14529 is intended to alter Caltrans's responsibility for the state highway system. (§ 14520.3, subds. (a)–(e).) Neither the plain language nor apparent purpose of section 14520.3 requires Caltrans to carry out those responsibilities using civil service personnel rather than private contractors." We are here concerned with article-VII-based regulatory statutes, which apparently these statutes are not, and do not decide whether the Court of Appeal's analysis is correct.

engineering] contracting." (Original boldface.) However, Professional Engineers argues, unless and until the Legislature uses its expanded power, sections 14101, 14130 et seq., and 19130 remain in effect, and Caltrans's authority to enter into contracts with private entities for architectural and engineering services is subject to the conditions set forth in those statutes.

Professional Engineers bases this reading of Proposition 35 on its construction of the phrase "State of California" in article XXII, section 1, as referring only to the Legislature. Professional Engineers also directs us to the principle that, when a constitutional provision removes a restriction on the Legislature's authority, the provision must be liberally interpreted as an expansion of the Legislature's power. In addition to urging that its interpretation of Proposition 35 is correct, Professional Engineers contends that the alternative interpretation, that the initiative impliedly repealed the statutes at issue, creates a separation of powers conflict because such construction divests the Legislature of the power to regulate private contracting and places it in the hands of executive branch agencies. Moreover, Professional Engineers argues that, if current statutory regulations of private contracting are deemed repealed by implication, then no statutory authorization exists at all for Caltrans to contract for architectural and engineering services with private entities.

 At the outset, we examine the issue of the Legislature's plenary authority to determine the circumstances under which public agencies may enter into private contracts for architectural and engineering services, because appeal to that authority is central to Professional Engineers's arguments. Plenary authority and exclusive authority are not synonymous concepts. (See *Independent Energy Producers Assn. v. McPherson* (2006) 38 Cal.4th 1020, 1035–1037 [44 Cal.Rptr.3d 644, 136 P.3d 178].) Under our constitutional system the Legislature is not the exclusive source of legislative power. "The legislative power of this State is vested in the California Legislature which consists of the Senate and the Assembly, but the people reserve to themselves the powers of initiative and referendum." (Cal. Const., art. IV, § 1.) "The initiative is the power of the electors to propose statutes and amendments to the Constitution and to adopt or reject them." (Cal. Const., art. II, § 8, subd. (a).) The electorate's legislative power is "generally coextensive with the power of the Legislature to enact statutes." (*Santa Clara County Local Transportation Authority v. Guardino* (1995) 11 Cal.4th 220, 253 [45 Cal.Rptr.2d 207, 902 P.2d 225].) Such statutes, moreover, like legislative enactments, are presumed to be valid. (*Legislature v. Eu* (1991) 54 Cal.3d 492, 501 [286 Cal.Rptr. 283, 816 P.2d 1309].)

 If, therefore, as Professional Engineers maintains, the Legislature has plenary authority to regulate private contracting by public agencies, then so, too, does the electorate. By enacting Proposition 35, the electorate has

exercised its authority. Our role as a reviewing court is to simply ascertain and give effect to the electorate's intent guided by the same well-settled principles we employ to give effect to the Legislature's intent when we review enactments by that body. (*People v. Rizo, supra*, 22 Cal.4th at p. 685.) We do not, of course, pass upon the " ' " 'wisdom, expediency, or policy' " ' " of enactments by the voters any more than we would enactments by the Legislature. (*California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 632 [59 Cal.Rptr.2d 671, 927 P.2d 1175].)

■ Central to Professional Engineers' argument that the purpose of Proposition 35 was to expand the Legislature's power is its interpretation of the phrase "State of California" in section 1 of article XXII as referring solely to the Legislature. That section reads in pertinent part: "The State of California and all other governmental entities, . . . shall be allowed to contract with qualified private entities for architectural and engineering services for all public works of improvement." (*Ibid.*) Professional Engineers maintains that "[f]undamental principles of statutory construction" confirm its interpretation of the phrase. But fundamental principles of construction, applicable equally to constitutional provisions, statutes and initiatives, require us to give words in such texts their ordinary meanings. (*Thompson v. Department of Corrections, supra*, 25 Cal.4th at p. 122.) "Of course, in construing the statute, '[t]he words . . . must be read in context, considering the nature and purpose of the statutory enactment,' " (*People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 301 [58 Cal.Rptr.2d 855, 926 P.2d 1042].)

■ The ordinary meaning of the phrase "State of California," as it refers to state government, includes all three branches—legislative, executive and judicial. (See Cal. Const., art. III, § 3.) Thus, section 1, in tandem with section 2, of article XXII grants all three branches of government the authority to contract with private entities for architectural and engineering services unimpeded by article VII restrictions.

This interpretation is supported if we examine the phrase in context. The initiative specifically designates the "Legislature" in section 4, where newly added Government Code section 4529.18 provides, "If any act of the Legislature conflicts with the provisions of this act, this act shall prevail." It also refers to "each house" of the Legislature in section 5, which sets forth the Legislature's authority to amend the initiative by statute. (Voter Information Guide, Gen. Elec. (Nov. 7, 2000) text of Prop. 35, § 5, p. 66; see appen., *post*, at p. 1055.) These references demonstrate that the drafters of the initiative were perfectly capable of designating the Legislature by name

where they intended to address the impact of the initiative on the Legislature's authority to regulate private contracting. It is inconceivable that the drafters would have failed to make clear in article XXII that the reference to "State of California" was to the Legislature alone.[7]

Based on its assertion that the intent behind Proposition 35 is to expand the Legislature's power to regulate private contracting without article VII limitations, should it choose to do so, Professional Engineers argues "[w]here a constitutional amendment removes restrictions and limitations on Legislative power, the constitutional amendment must be construed liberally in favor of the Legislature's action." However, given that the premise of its claim—that "State of California" in article XXII refers to the Legislature alone—is erroneous, this principle is inapplicable here.[8]

In addition to urging us to embrace its interpretation of Proposition 35, Professional Engineers contends that an interpretation of the initiative that allows Caltrans to contract with private entities for architectural and engineering services without implementing legislation violates the separation of powers doctrine because it diverts a legislative function, regulation of private contracting, to an executive agency. We disagree. This interpretation of Proposition 35 does not endorse a shift of policymaking powers from the legislative branch to executive branch agencies. Rather, it recognizes that

---

[7] Professional Engineers also supports its argument that Proposition 35 did no more than expand the Legislature's power in the realm of private contracting with its view of the intent of Proposition 35 vis-à-vis our 1997 *Professional Engineers* opinion. Because the decision struck down statutes by which the Legislature had attempted to expand the power of public entities to contract for architectural and engineering services in violation of the civil service mandate, Professional Engineers argues that the intent of Proposition 35 was to overrule that decision only to the extent that it limited the Legislature's power in this respect. Thus, Professional Engineers contends that Proposition 35 did not intend to affect already existing statutes regulating private contracting, like sections 14101 and 19130, because those statutes did not violate the civil service mandate. This interpretation of our *Professional Engineers* opinion ignores the more salient discussion in which we declined Caltrans's invitation to overrule 60 years of case authority imposing article-VII-based restrictions on private contracting and suggested that abrogation of this body of law would require a constitutional amendment. (*Professional Engineers v. Department of Transportation, supra,* 15 Cal.4th at p. 566.) It was this part of our analysis to which Proposition 35 appears to have been directed, rather than the more narrow discussion of the validity of the specific statutes at issue in that decision.

[8] Equally inapposite is the decision with which Professional Engineers seeks to buttress its claim, *Methodist Hosp. of Sacramento v. Saylor* (1971) 5 Cal.3d 685 [97 Cal.Rptr. 1, 488 P.2d 161]. In that case, the voters enacted a constitutional measure related to loan guarantees for hospital construction that used terms that contemplated further legislative action. (*Id.* at pp. 692–694.) We upheld as constitutional implementing statutes enacted by the Legislature based on its interpretation of the terms. (*Id.* at pp. 691–692.) There is no comparable language in Proposition 35 authorizing legislative implementation of the initiative.

there has been a policy determination, made by a constitutionally empowered legislative entity, the electorate acting through its initiative power, to permit those agencies to contract for architectural and engineering services free of article-VII-derived limitations.

Professional Engineers cites *Kugler v. Yocum* (1968) 69 Cal.2d 371 [71 Cal.Rptr. 687, 445 P.2d 303], for the proposition that regulation of private contracting involves a core legislative function—" 'the determination and formulation of the legislative policy.' " (*Id.* at p. 376.) We agree with the general principle, of course, but as *Yocum* itself illustrates, this legislative function is not the exclusive province of the Legislature.

*Yocum* involved the refusal of a city council to hold an election on a proposed initiative ordinance involving the salaries of certain city employees. In affirming the issuance of a peremptory writ of mandate commanding the city to conduct the election, we observed that the salary question raised a " 'legislative' rather than [an] 'administrative' " issue and therefore "falls within the electorate's initiative power." (*Kugler v. Yocum, supra*, 69 Cal.2d at p. 374.) Similarly here, the setting of policy with respect to private contracting is a legislative matter and, therefore, a proper subject for the electorate to exercise its legislative authority through initiative, which is what the electorate has done. The initiative accomplishes what Professional Engineers argues under its interpretation of Proposition 35 that the Legislature could also have chosen to do in its own time—repeal statutes embodying article-VII-derived restrictions on private contracting. We perceive no separation of powers violation simply because the electorate, rather than the Legislature, exercised its constitutional authority as a legislative entity to make policy in this area.[9]

Moreover, we agree with Caltrans that the constitutional provision in Proposition 35 is self-executing and does not require legislative implementation. (*People v. Vega-Hernandez* (1986) 179 Cal.App.3d 1084, 1091 [225 Cal.Rptr. 209] [constitutional provisions are presumed to be self-executing unless a contrary expression is clearly stated].) This being so, there is no separation of powers violation simply because the electorate has chosen to bypass the Legislature and, through Proposition 35, authorize public agencies to contract for architectural and engineering services pursuant to the constitutional and statutory provisions added by the initiative. (*Chesney v. Byram* (1940) 15 Cal.2d 460, 462 [101 P.2d 1106] [constitutional provision is

---

[9] The amicus curiae brief filed on behalf of the leadership of the Legislature contends that agencies have only such power as conferred by the Constitution or by statute and, therefore, Caltrans has no authority to contract out for architectural or engineering services absent legislative authorization. Again, this argument presupposes that only the Legislature can confer such authority, but here the electorate through initiative can and has conferred this authority through Proposition 35.

self-executing " 'if it supplies a·sufficient rule by means of which the right given may be enjoyed and protected, or the duty [to be] imposed may be enforced' "].)

We do not believe that any interpretation of Proposition 35, other than an interpretation that expands the Legislature's power, impermissibly forecloses the Legislature's role in the realm of private contracting by state agencies. This case does not present the global question of the Legislature's power vis-à-vis such private contracting. We address only the issue before us—whether it was the intent of the electorate in enacting Proposition 35 to lift article-VII-derived limitations embodied in certain specific statutes and thereby allow public agencies to enter into contracts with private entities for particular kinds of services, architectural and engineering services, free of these particular limitations. Even within this specific area of public contracting, section 5 of the initiative reserved to the Legislature some measure authority to act.[10] Therefore, our interpretation of Proposition 35 does not leave the Legislature out of the public contracting equation even as to the specific subject matter of this initiative.

 For the same reason, we reject the claim advanced by Professional Engineers that Proposition 35 produced such a fundamental restructuring of state government as to constitute a revision of the Constitution. A revision to the Constitution cannot be accomplished by an amendment but requires a constitutional convention. A revision may be found where an enactment "is so extensive in its provisions as to change directly the 'substantial entirety' of the Constitution by the deletion or alteration of numerous existing provisions" or "accomplish[es] such far reaching changes in the nature of our basic governmental plan as to amount to a revision also." (*Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization* (1978) 22 Cal.3d 208, 223 [149 Cal.Rptr. 239, 583 P.2d 1281].) Professional Engineers' argument appears to be based on the latter, or qualitative, effect of Proposition 35:

[10] The amicus curiae brief filed on behalf of the leadership of the Legislature also contends that this construction of Proposition 35 has the effect of limiting legislative authority in the realm of private contracting to that authority expressly provided by section 5 of the initiative. As part of their initiative power, " 'the voters have the power to decide whether or not the Legislature can amend or repeal initiative statutes. That power is absolute and includes the power to enable legislative amendment *subject to conditions attached by the voters.*' " (*Amwest Surety Ins. Co. v. Wilson* (1995) 11 Cal.4th 1243, 1251 [48 Cal.Rptr.2d 12, 906 P.2d 1112].) That is what the voters intended here when, in section 5, they conditioned legislative authority to amend the initiative statutes to such amendments as will further the purposes of the initiative. (Voter Information Guide, Gen. Elec. (Nov. 7, 2000) text of Prop. 35, § 5, p. 66; see appen., *post*, at p. 1055.) We are bound by this clear expression of the electorate's will. Whether particular amendments are consistent with this directive must, of course, be determined on a case-by-case basis.

"Taking away the Legislature's plenary power to determine contracting out policies and procedures for the State of California, and shifting that power to the Executive branch, constitutes a fundamental restructuring of our traditional tripartite system of government."[11]

 As we have pointed out, however, this characterization of the effects of Proposition 35 as we have discerned its intent and purpose, is erroneous. Proposition 35 does not usurp the Legislature's plenary authority to regulate private contracting by public agencies in a global sense, but simply permits public agencies to enter into contracts with private entities for architectural and engineering services without article-VII-derived restrictions on their ability to do so. Under Professional Engineers's own interpretation of Proposition 35, repealing the statutes at issue could permissibly be done by the Legislature. Here, that repeal has been effected by the other constitutionally empowered legislative authority, the electorate. Therefore, this is not a case in which the Legislature has been stripped of authority to regulate private contracting but, rather, a case in which a permissible legislative decision has been made to remove previous limitations on the ability of public agencies to contract for architectural and engineering services. Moreover, as we have observed, even under our construction of Proposition 35, the Legislature retains some authority as defined in section 5 to amend the initiative by statute. Accordingly, we cannot agree that Proposition 35 creates such "far reaching changes [to] our basic governmental plan as to amount to a revision." (*Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization, supra,* 22 Cal.3d at p. 223.)[12]

 Finally, Professional Engineers contends that, if Proposition 35 is construed to implicitly repeal preexisting statutes regulating private contracting, then Caltrans has no statutory authority at all to enter into such contracts.

---

[11] In any event, given that Proposition 35 adds only a single constitutional provision "the quantitative effects on the Constitution seem no more extensive than those presented in prior cases upholding initiative measures challenged as constitutional revisions." (*Raven v. Deukmejian* (1990) 52 Cal.3d 336, 351 [276 Cal.Rptr. 326, 801 P.2d 1077].)

[12] Amicus curiae Local 21 of the International Federation of Professional and Technical Engineers, AFL-CIO, argues that an interpretation of Proposition 35 that divests the Legislature of the authority to regulate private contracting "would divest charter cities of the plenary authority under the 'home rule' provisions of California Constitution, Article XI, Section 5." "[I]t is the general rule that an amicus curiae accepts the case as he finds it and may not 'launch out upon a juridical expedition of its own unrelated to the actual appellate record . . . .' " (*E. L. White, Inc. v. City of Huntington Beach* (1978) 21 Cal.3d 497, 510–511 [146 Cal.Rptr. 614, 579 P.2d 505], quoting *Pratt v. Coast Trucking, Inc.* (1964) 228 Cal.App.2d 139, 143 [39 Cal.Rptr. 332].) The impact of Proposition 35 on local governments exceeds the scope of our review and is not raised by the parties. Therefore it is unnecessary to address at this time the issue of the impact of Proposition 35 on local government.

The Court of Appeal found that authority in section 14030, subdivision (d), which authorizes Caltrans to plan, design, construct, operate, and maintain "transportation systems which the Legislature has made, or may make, the responsibility of the department." Professional Engineers argues that section 14030 does not confer such authority because nothing in its language or history demonstrates that it was intended to authorize private contracting. This is true, but irrelevant. We agree with the Court of Appeal that section 14030 is a broad grant of power sufficient to encompass private contracting for the accomplishment of Caltrans's tasks once that authority became available to Caltrans, which it did when the voters enacted Proposition 35. The voters are presumed to have been aware of existing laws at the time the initiative was enacted. (*People v. Weidert* (1985) 39 Cal.3d 836, 844 [218 Cal.Rptr. 57, 705 P.2d 380].) Therefore, the voters can be deemed to have been aware that Caltrans's broad preexisting authority to plan, design, construct, operate and maintain transportation systems was sufficient to add to it the new authority to contract out for architectural and engineering services without requiring enactment of a separate implementing statute.

■ Furthermore, as the Court of Appeal pointed out, article XXII, which confers the choice and authority to enter into contracts with private entities for architectural and engineering services is, like all constitutional provisions, presumed to be self-executing unless a contrary intention is clearly expressed. (*People v. Vega-Hernandez, supra*, 179 Cal.App.3d at p. 1092.) Here no such intention has been shown and, as previously noted, we must presume the amendment is self-executing and needs no implementing legislation.

■ For all these reasons, we conclude that Proposition 35 implicitly repealed preexisting statutes regulating private contracting for architectural and engineering services.

### D. *Continuing Validity of the QBS Procedure*

■ The remaining issue before us is the continued validity of the QBS procedure, set forth in sections 4525 to 4529.5, used by Caltrans to select private architectural and engineering firms. The QBS procedure requires the agency to negotiate a contract "with the best qualified firm" for such services "at compensation which the state agency head determines is fair and reasonable to the State of California or the political subdivision involved." (§ 4528, subd. (a)(1).) Thus, qualifications, not cost, is the primary competitive measure by which contracts are awarded under the QBS procedure. But cost is not irrelevant. If the agency is unable to negotiate a contract with the most

qualified firm at a fair and reasonable price, negotiations are terminated and the agency is directed to "undertake negotiations with the second most qualified firm," and then, failing that, with the "third most qualified firm." (§ 4528, subd. (a)(2).) If this process fails to produce a contract, the agency "shall select additional firms in order of their competence and qualification and continue negotiations . . . until an agreement is reached." (§ 4528, subd. (a)(3).)

As an additional cost safeguard, administrative regulations require Caltrans to prepare its own cost estimate for a project before commencing price negotiations. That estimate "may be based on such factors as a market survey, comparison with fees paid to other departments' or agencies' contractors for similar services, or comparison with the salaries of comparable positions within the Department, within State service, or within other governmental entities. This estimate shall serve as a guide in determining fair and reasonable compensation for the services rendered." (Cal. Code Regs., tit. 21, § 1520.4.)

In the trial court and the Court of Appeal, Professional Engineers contended that Proposition 35 implicitly repealed these statutes because the QBS procedure was inconsistent with the initiative's cost-saving mandate. In this court, however, Professional Engineers has retreated from that position. Instead, it argues only that, to meet the initiative's cost-saving mandate, "[l]egislation implementing Proposition 35 must add a cost savings mechanism to the consultant selection process."

We agree with the Court of Appeal that the QBS procedure is not inconsistent with Proposition 35's requirement that "contracting for architectural and engineering services occur[] through a fair, competitive selection process . . ." (Voter Information Guide, Gen. Elec. (Nov. 7, 2000) text of Prop. 35, § 2, subd. (e) p. 65; see appen., *post*, at pp. 1053–1055; § 4529.12), for the reasons given by that court. First, the QBS process *is* a competitive process and "while cost may be a less salient consideration in the qualifications-based selection procedure than in a competitive bidding process, it is a consideration nevertheless."

Second, section 4529.16 requires that the initiative "shall not be applied in a manner that will result in the loss of federal funding to any governmental entity." As the Court of Appeal explained: "Federal law requires the use of a qualifications-based selection procedure where the construction of federal-aid highways is to be performed by a state transportation department or under its supervision, contracts for architectural and engineering services must be awarded pursuant to the Brooks Act (40 U.S.C. § 1101 et seq.) or an equivalent state qualifications-based selection procedure.

(23 U.S.C. § 112(b)(2)(A).) The Brooks Act establishes a qualification-based selection procedure virtually identical to Government Code chapter 10, sections 4525–4529.5. (40 U.S.C. § 1101 et seq.) About 84 percent of Caltrans architectural and engineering contracts are subject to these federal requirements. At a minimum, as to federally funded projects, section 4529.16 compels a construction of section 4529.12 that allows the use of the qualifications based procedure."

Third, while the initiative mentions taxpayer savings, the ballot materials made clear that cost savings were not necessarily the measure of the value to the taxpayers of permitting private contracting by public entities. As the Court of Appeal observed: "The official summary of the initiative prepared by the Attorney General, and the Legislative Analyst's analysis of the measure both indicate that the fiscal impact of the initiative was unknown. The Legislative Analyst specifically notes that in some cases costs may be higher when an agency contracts out. 'It may still be in the state's best interests to do so, however, because of other considerations' such as avoiding the delay of formally hiring and training state employees to meet a short-term surge in workload, and the financial benefits derived from completing construction projects more quickly. Moreover, the official summary clearly states that competitive bidding on the contracts (the prevailing method of public contractor selection that gives prominent weight to cost) is permitted but not required under Proposition 35." In addition, the argument in favor of the initiative specifically informed voters that existing selection statutes would be utilized to procure architectural and engineering services. "Prop. 35 would simply restore state and local agencies' choice to utilize private experts— *using the same fair selection process on the books today*—to select the most *qualified* architects or engineers to get these projects designed and built on time and on budget." (Voter Information Guide, Gen. Elec. (Nov. 7, 2000) argument in favor of Prop. 35, p. 20; see appen., *post*, at p. 1062, italics added.) The voters are deemed to have understood that reference was to the QBS statutes then in effect. (*People v. Weidert, supra,* 39 Cal.3d at p. 844.)

 We conclude, therefore, that the QBS procedure is not inconsistent with Proposition 35 and Caltrans's use of that procedure is not improper. To the extent that Professional Engineers's argument is that Proposition 35 requires some legislative alteration of the QBS procedure to give cost savings a more prominent role, that argument is best directed at the Legislature. Proposition 35 gives the Legislature the power to amend the initiative by statute to further its purposes. (Voter Information Guide, Gen. Elec. (Nov. 7, 2000) text of Prop. 35, § 5; see appen., *post*, at p. 1055.) Unless and until the Legislature does so, however, we are in no position to pass upon the validity of such amendment.

## III. DISPOSITION

The judgment of the Court of Appeal is affirmed.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Corrigan, J., concurred.

# APPENDIX

PROPOSITION 2000 General

## 35 PUBLIC WORKS PROJECTS.
USE OF PRIVATE CONTRACTORS FOR
ENGINEERING AND ARCHITECTURAL SERVICES.

Text of Proposed Law

This initiative measure is submitted to the people in accordance with the provisions of Section 8 of Article II of the California Constitution.

This initiative measure adds sections to the California Constitution and the Government Code; therefore, new provisions proposed to be added are printed in *italic type* to indicate that they are new.

PROPOSED LAW

FAIR COMPETITION AND TAXPAYER SAVINGS INITIATIVE

SECTION 1. TITLE

This measure shall be known and may be cited as the "Fair Competition and Taxpayer Savings Act."

SEC. 2. PURPOSE AND INTENT It is the intent of the people of the State of California in enacting this measure:

(a) To remove existing restrictions on contracting for architectural and engineering services and to allow state, regional and local governments to use qualified private architectural and engineering firms to help deliver transportation, schools, water, seismic retrofit and other infrastructure projects safely, cost effectively and on time;

(b) To encourage the kind of public/private partnerships necessary to ensure that California taxpayers benefit from the use of private sector experts to deliver transportation, schools, water, seismic retrofit and other infrastructure projects;

(c) To promote fair competition so that both public and private sector architects and engineers work smarter, more efficiently and ultimately deliver better value to taxpayers;

(d) To speed the completion of a multi-billion dollar backlog of highway, bridge, transit and other projects;

(e) To ensure that contracting for architectural and engineering services occurs through a fair, competitive selection process, free of undue political influence, to obtain the best quality and value for California taxpayers; and

(f) To ensure that private firms contracting for architectural and engineering services with governmental entities meet established design and construction standards and comply with standard accounting practices and permit financial and performance audits as necessary to ensure contract services are delivered within the agreed schedule and budget.

SEC. 3. Article XXII is added to the California Constitution, to read:

*SECTION 1. The State of California and all other governmental entities, including, but not limited to, cities, counties, cities and counties, school districts and other special districts, local and regional agencies and joint power agencies, shall be allowed to contract with qualified private entities for architectural and engineering services for all public works of improvement. The choice and authority to contract shall extend to all phases of project development including permitting and environmental studies, rights-of-way services, design phase services and construction phase services. The choice and authority shall exist without regard to funding sources whether federal, state, regional, local or private, whether or not the project is programmed by a state, regional or local governmental entity, and whether or not the completed project is a part of any state owned or state operated system or facility.*

*SEC. 2. Nothing contained in Article VII of this Constitution shall be construed to limit, restrict or prohibit the State or any other governmental entities, including, but not limited to, cities, counties, cities and counties, school districts and other special districts, local and regional agencies and joint power agencies, from contracting with private entities for the performance of architectural and engineering services.*

SEC. 4. Chapter 10.1 (commencing with Section 4529.10) is added to Division 5 of Title 1 of the Government Code, to read:

*4529.10. For purposes of Article XXII of the California Constitution and this act, the term "architectural and engineering services" shall include all architectural, landscape architectural, environmental, engineering, land surveying, and construction project management services.*

*4529.11. All projects included in the State Transportation Improvement Program programmed and funded as interregional improvements or as regional improvements shall be subject to Article XXII of the California Constitution. The sponsoring governmental entity shall have the choice and the authority to contract with qualified private entities for architectural and engineering services. For projects programmed and funded as regional improvements, the sponsoring governmental entity shall be the regional or local project sponsor. For projects programmed and funded as interregional improvements, the sponsoring governmental entity shall be the State of California, unless there is a regional or local project sponsor, in which case the sponsoring governmental entity shall be the regional or local project sponsor. The regional or local project sponsor shall be a regional or local governmental entity.*

*4529.12. All architectural and engineering services shall be procured pursuant to a fair, competitive selection process which prohibits governmental agency employees from participating in the selection process when they have a financial or business relationship with*

any private entity seeking the contract, and the procedure shall require compliance with all laws regarding political contributions, conflicts of interest or unlawful activities.

4529.13. Nothing contained in this act shall be construed to change project design standards, seismic safety standards or project construction standards established by state, regional or local governmental entities. Nor shall any provision of this act be construed to prohibit or restrict the authority of the Legislature to statutorily provide different procurement methods for design-build projects or design-build-and-operate projects.

4529.14. Architectural and engineering services contracts procured by public agencies shall be subject to standard accounting practices and may require financial and performance audits as necessary to ensure contract services are delivered within the agreed schedule and budget.

4529.15. This act only applies to architectural and engineering services defined in Government Code Section 4529.10. Nothing contained in this act shall be construed to expand or restrict the authority of governmental entities to contract for fire, ambulance, police, sheriff, probation, corrections or other peace officer services. Nor shall anything in this act be construed to expand or restrict the authority of governmental entities to contract for education services including but not limited to, teaching services, services of classified school personnel and school administrators.

4529.16. This act shall not be applied in a manner that will result in the loss of federal funding to any governmental entity.

4529.17. The provisions of this act are severable. If any provision of this act or its application is held invalid, that invalidity shall not affect other provisions or applications that can be given effect without the invalid provision or application.

4529.18. If any act of the Legislature conflicts with the provisions of this act, this act shall prevail.

4529.19. This act shall be liberally construed to accomplish its purposes.

4529.20. This act seeks to comprehensively regulate the matters which are contained within its provisions. These are matters of statewide concern and when enacted are intended to apply to charter cities as well as all other governmental entities.

SEC. 5. This initiative may be amended to further its purposes by statute, passed in each house by roll call vote entered in the journal, two-thirds of the membership concurring, and signed by the Governor.

SEC. 6. If there is a conflicting initiative measure on the same ballot, which addresses and seeks to comprehensively regulate the same subject, only the provisions of this measure shall become operative if this measure receives the highest affirmative vote.

# PUBLIC WORKS PROJECTS. USE OF PRIVATE CONTRACTORS FOR ENGINEERING AND ARCHITECTURAL SERVICES.

Official Title and Summary

**Official Title and Summary Prepared by the Attorney**
**PUBLIC WORKS PROJECTS. USE OF PRIVATE CONTRACTORS FOR ENGINEERING AND ARCHITECTURAL SERVICES.**
Initiative Constitutional Amendment and Statute.

• Amends constitution to provide that in the design, development and construction of public works projects, state government may choose to contract with private entities for engineering and architectural services without regard to certain existing legal restrictions which apply to the procurement of other services.

• Specifies that local governments may also choose to contract with private entities for engineering, architectural services.

• Imposes competitive selection process, which permits but does not require competitive bidding, in awarding engineering and architectural contracts.

Summary of Legislative Analyst's Estimate of Net State and Local Government Fiscal Impact:

• Unknown fiscal impact on state spending for architectural and engineering services and construction project delivery. Actual impact will depend on how the state uses the contracting flexibility granted by the proposition in the future.

• Little or no fiscal impact on local governments because they generally can now contract for these services.

Analysis by the Legislative Analyst

Argument in Favor of Proposition 35

Rebuttal to Argument in Favor of Proposition 35

Argument Against Proposition 35

Rebuttal to Argument Against Proposition 35

PROPOSITION

**35**

**PUBLIC WORKS PROJECTS.
USE OF PRIVATE CONTRACTORS FOR
ENGINEERING AND ARCHITECTURAL SERVICES.**

*2000* General

Ballot Measure Summary

## PUBLIC WORKS PROJECTS.
## USE OF PRIVATE CONTRACTORS FOR ENGINEERING AND ARCHITECTURAL SERVICES.

INITIATIVE CONSTITUTIONAL AMENDMENT AND STATUTE.
Put on the Ballot by Petition Signatures.

### SUMMARY

Amends Constitution eliminating existing restrictions on state, local contracting with private entities for engineering, architectural services; contracts awarded by competitive selection; bidding permitted, not required. Fiscal Impact: Unknown impact on state spending for architectural and engineering services and construction project delivery. Actual impact will depend on how the state uses the contracting flexibility under the proposition.

### WHAT YOUR VOTE MEANS

**YES**
A YES vote on this measure means: The state could contract with private individuals or firms for architectural and engineering services in all situations rather than only under certain conditions (such as when the work is of a temporary nature or of such a specialized nature that it cannot be provided by state employees).

**NO**
A NO vote on this measure means: The state could contract with private individuals or firms for architectural and engineering services only under certain conditions.

### ARGUMENTS

**PRO**
Prop. 35—Supported by hundreds of taxpayer groups, seniors, schools, local governments, business, labor, highway/earthquake safety engineers. Restores government's ability to engage in public/private partnerships with qualified engineers to speed up thousands of backlogged highway and other public works projects. Creates 40,000 jobs. Saves taxpayers $2.5 billion annually.

**CON**
Proposition 35 changes the Constitution to benefit one special interest at taxpayer expense. Like other states, California currently awards engineering contracts based on cost, qualifications, and experience. Prop. 35 replaces that with an undefined contracting process which allows overpriced government contracts based on campaign contributions and political influence. Vote No!

FOR ADDITIONAL INFORMATION

FOR
Taxpayers for Fair Competition— A coalition of taxpayers, engineers, seniors, schools, local government, business, labor, highway safety experts and frustrated commuters.
11300 W. Olympic Blvd., Ste. 840
Los Angeles, CA 90064
(310) 996-2671/Info@YesProp35.com
www.YesProp35.com

AGAINST
Steve Hopcraft
No On Prop. 35
3551 N St.
Sacramento, CA 95816
(916) 446-0512
noonprop35@cwo.com
noonprop35.org

PROPOSITION

**35**

PUBLIC WORKS PROJECTS. USE OF PRIVATE
CONTRACTORS FOR ENGINEERING AND
ARCHITECTURAL SERVICES.

*2000* General

Analysis

**Analysis by the Legislative Analyst**

## BACKGROUND

Under California constitutional law, services provided by state agencies generally must be performed by state civil service employees. These services cover a broad range of activities—such as clerical support, building maintenance and security, and legal services. In some cases, however, the state may contract with private firms to obtain services. Such contracting is allowed, for example, if services needed by the state are: (1) of a temporary nature, (2) not available within the civil service, or (3) of a highly specialized or technical nature. Unlike the state, local governments are not subject to constitutional restrictions on contracting for services.

The state and local governments frequently contract with private firms for construction-related services, which include architectural, engineering, and environmental impact studies. State and local governments enter into these contracts through a competitive process of advertising for the service, selecting the firm determined to be best qualified, and negotiating a contract with that firm. However, neither the state nor most local government entities use a bidding process for these services. By comparison, bidding generally is used to acquire goods and for construction of projects.

## PROPOSAL

This proposition amends the State Constitution to allow the state and local governments to contract with qualified private entities for architectural and engineering services for all phases of a public works project. Thus, governments could decide to contract out for these specific services in any case, rather than just on an exception basis.

The proposition also enacts statutory laws which:

• Define the term "architectural and engineering services" to include all architectural, landscape architectural, environmental, engineering, land surveying, and construction project management services.

• Specify that all projects in the State Transportation Improvement Program (STIP) are covered by the requirements of the proposition. The STIP is the state's transportation plan that includes public works projects to increase the capacity of the state's highways and provide transit capital improvements (such as new freeways, new interchanges, and passenger rail rights-of-way). The STIP is the state's largest ongoing capital improvement program. Thus, the proposition would probably have the greatest impact in the transportation area.

• Require architectural and engineering services to be obtained through a fair, competitive selection process that avoids conflicts of interest.

## FISCAL EFFECT

### Impacts on State Costs

Eliminating restrictions on contracting out for architectural and engineering services would make it easier for the state to enter into contracts with private individuals or firms to obtain these services. As a result, the state would likely contract out more of these services. This could affect state costs in two main ways.

Cost of the Services. The fiscal impact would depend on the cost of salaries and benefits for state employees performing architectural and engineering services compared to the cost of contracts with private firms. These costs would vary from project to project. In some cases, costs may be higher to contract out. It may still be in the state's best interest to do so, however, because of other considerations. For instance, during times of workload growth (such as a short-term surge in construction activity), contracting for services could be faster than hiring and training new state employees. In addition, contracting can prevent the build-up of a "peak-workload" staff that can take time to reduce once workload declines.

For these reasons, the proposition's net impact on state costs for architectural and engineering services is unknown, and would depend in large part on how the state used the flexibility granted under the measure. Impact on Construction Project Delivery. The ability to contract for architectural and engineering services could also result in construction projects being completed earlier. As noted above, during times of workload growth, the ability to contract for these services could result in projects' completion earlier than through the hiring and training of new state employees. This, in turn, could have state fiscal impacts—such as savings in construction-related expenses. In these cases, faster project completion would also benefit the public as capital improvements would be in service sooner.

### Impacts on Local Government Costs

There should be little or no fiscal impact on local governments because they generally can now contract for architectural and engineering services.

Analysis by the Legislative Analyst

Argument in Favor of Proposition 35

Rebuttal to Argument in Favor of Proposition 35

Argument Against Proposition 35

Rebuttal to Argument Against Proposition 35

PROPOSITION

**35**

PUBLIC WORKS PROJECTS. USE OF PRIVATE CONTRACTORS FOR ENGINEERING AND ARCHITECTURAL SERVICES.

*2000* General

Argument in Favor

## Argument in Favor of Proposition 35

TRAFFIC GRIDLOCK, OVERCROWDED SCHOOLS:

DOESN'T IT JUST MAKE SENSE TO PUT EVERYONE TO WORK TO SOLVE THESE PROBLEMS?

• Proposition 35, the Fair Competition Initiative, simply gives state and local governments the choice to hire qualified private sector engineers and architects where it makes sense to do so— SOMETHING MANY OTHER STATES DO ALREADY.

Why is Proposition 35 needed?

BEEN STUCK IN TRAFFIC LATELY?

According to the state's independent Legislative Analyst, last year traffic congestion cost California consumers $7.8 million a day! There is a huge BACKLOG of transportation projects needed to REDUCE CONGESTION and PREPARE OUR HIGHWAYS, BRIDGES AND OVERPASSES FOR THE NEXT EARTHQUAKE.

• PROP. 35 WILL ALLOW US TO USE PRIVATE EXPERTS TO GET TRANSPORTATION PROJECTS COMPLETED ON TIME AND ON BUDGET—AND KEEP TAXES DOWN.

How did we get into this mess?

A small group of Caltrans bureaucrats—concerned only with their self-interests—filed several lawsuits that essentially banned the state from hiring private architects and engineers. They even terminated 15 existing earthquake retrofit contracts with private engineering firms.

• PROP. 35 WILL ALLOW CALIFORNIA TO ONCE AGAIN MAKE USE OF PRIVATE SECTOR EARTHQUAKE EXPERTS TO ENSURE THE SAFETY OF OUR HIGHWAYS AND BRIDGES.

But the problem doesn't end there: school districts, cities, counties and other local agencies' ability to choose both private and public sector architects and engineers is at risk, too.

Prop. 35 would simply restore state and local agencies' choice to utilize private experts— using the same fair selection process on the books today—to select the most qualified architects or engineers to get these projects designed and built on time and on budget.

• PROP. 35 MEANS WE DON'T HAVE TO RELY ONLY ON CALTRANS.

The state's independent Legislative Analyst recommended Caltrans contract out more work.

Why? Caltrans simply cannot do all the work alone. Plus, 17% of the Caltrans engineers have less than 3 years experience. And Caltrans is hardly a model of efficiency—a recent university study shows Caltrans spends more on administration than on maintenance of our roads and highways!

• THE CALIFORNIA TAXPAYERS' ASSOCIATION and other taxpayer groups SUPPORT PROP. 35 because it could SAVE CALIFORNIANS $2.5 BILLION ANNUALLY and CREATE 40,000 JOBS over the next ten years.

California's population is growing, creating the need for more schools, roads, transit, hospitals and other vital services. THERE'S PLENTY OF WORK FOR BOTH PUBLIC AND PRIVATE ENGINEERS AND ARCHITECTS to relieve traffic congestion, accommodate growing school needs and retrofit our aging highway system.

• COMMON SENSE TELLS US PUBLIC-PRIVATE PARTNERSHIPS ARE THE MOST COST-EFFECTIVE WAY TO MEET THESE NEEDS and SAVE TAXPAYERS MONEY.

With so much at stake, WE NEED ALL HANDS ON DECK. Join with:

• California Taxpayer Protection Committee

• Coalition for Adequate School Housing

• California Minority and Women's Business Coalition

• California Chamber of Commerce

• California Society of Professional Engineers

• National Federation of Independent Business

• J. E. Smith, Former Commissioner of the California

Highway Patrol

And hundreds of school districts, cities, counties, water districts, transportation agencies and earthquake engineers.

VOTE YES on 35.

LARRY MCCARTHY, President
California Taxpayers' Association
LORING A. WYLLIE, JR., Past President
Earthquake Engineering Research Institute
TODD NICHOLSON, President
Californians for Better Transportation

**1062**

Analysis by the Legislative Analyst

Argument in Favor of Proposition 35

Rebuttal to Argument in Favor of Proposition 35

Argument Against Proposition 35

Rebuttal to Argument Against Proposition 35

**PROPOSITION** *2000* General

# 35

## PUBLIC WORKS PROJECTS. USE OF PRIVATE CONTRACTORS FOR ENGINEERING AND ARCHITECTURAL SERVICES.

Rebuttal to Argument in Favor

### Rebuttal to Argument in Favor of Proposition 35

Proposition 35's backers use buzzwords: "gridlock," "over-crowded schools." BUT THEY DON'T SAY WHAT IT ACTUALLY DOES.

They say we need to give government "the choice" to contract with private engineering corporations. But that choice ALREADY EXISTS.

FACTS:

• CALIFORNIA ALREADY USES BOTH PUBLIC AND PRIVATE ENGINEERS. Just like other states, THOUSANDS OF GOVERNMENT CONTRACTS ARE ANNUALLY AWARDED to private firms of every kind. This year, Caltrans will spend $150,000,000.00 on contracts with private engineers.

• PUBLIC-PRIVATE PARTNERSHIPS ALREADY EXIST. For example, when the Northridge earthquake knocked down the Santa Monica Freeway, a partnership of Caltrans engineers and private construction companies rebuilt it in record time.

So why is Proposition 35 on the ballot?

The REAL PURPOSE is to benefit engineering consultants who paid to put Proposition 35 on the ballot.

• Proposition 35 AMENDS THE CONSTITUTION TO EXEMPT JUST THIS ONE INDUSTRY from legal requirements that apply to every other business that contracts with state government.

• Proposition 35 REQUIRES A NEW SELECTION PROCESS WHICH IT DOES NOT DEFINE. How will engineering contracts be awarded? Proposition 35 doesn't say.

Because Proposition 35 doesn't define the process, it will cause CONFUSION, LITIGATION AND COSTLY ROAD AND SCHOOL CONSTRUCTION DELAYS while new regulations are created and challenged in court.

California Federation of Teachers says Proposition 35 will delay construction needed for class size reduction. Howard Jarvis Taxpayers Association says Proposition 35 will COST TAXPAYERS HUNDREDS OF MILLIONS OF DOLLARS.

Don't let a special interest change the Constitution for its benefit, not yours.

VOTE NO ON PROPOSITION 35!

LENNY GOLDBERG, Executive Director
California Tax Reform Association
MARY BERGAN, President
California Federation of Teachers
HOWARD OWENS, President
Consumer Federation of California

Analysis by the Legislative Analyst

Argument in Favor of Proposition 35

Rebuttal to Argument in Favor of Proposition 35

Argument Against Proposition 35

Rebuttal to Argument Against Proposition 35

PROPOSITION

**35**

PUBLIC WORKS PROJECTS. USE OF PRIVATE CONTRACTORS FOR ENGINEERING AND ARCHITECTURAL SERVICES.

*2000 General*

Argument Against

**Argument Against Proposition 35**

You've seen it before, and here we go again. PROPOSITION 35 IS ANOTHER MISLEADING, SELF-SERVING, SPECIAL INTEREST INITIATIVE.

WHO'S BEHIND PROPOSITION 35?

According to official reports, huge engineering corporations paid millions to place Proposition 35 on the ballot and they are spending millions more to mislead you into voting for it. Are they really spending all that money to help you, the taxpayer? Of course not!

PROPOSITION 35 CHANGES CALIFORNIA'S CONSTITUTION so large engineering corporations don't have to abide by the rules that apply to every other business that contracts with government in California. Every year, state and local governments spend billions of dollars on contracts with thousands of businesses.

PROPOSITION 35 CREATES A SPECIAL INTEREST EXEMPTION FOR ONLY ONE GROUP—ITS SPONSORS!

HOW DOES PROPOSITION 35 AFFECT YOU?

Independent experts agree that PROPOSITION 35 WILL DELAY CONSTRUCTION OF ROADS, SCHOOLS, HEALTH CARE FACILITIES, and other needed projects for years.

A top regulatory expert says Proposition 35 will bring public contracting to a "crawl, if not a complete halt" while a NEW BLOATED STATE BUREAUCRACY develops a NEW SET OF STATE REGULATIONS and IMPOSES THEM ON OUR CITIES, COUNTIES, AND SCHOOL DISTRICTS!

Independent legal analyses say LAWSUITS WILL CAUSE EVEN MORE DELAYS!

THESE DELAYS COST YOU MONEY! The former State Auditor General, California's independent fiscal watchdog, identified MORE THAN $8 BILLION of school, road, and hospital projects that will be delayed at a cost of HUNDREDS OF MILLIONS OF DOLLARS! Taxpayer dollars—YOUR DOLLARS!

Project delays mean TRAFFIC CONGESTION WILL GET WORSE. That's why the Engineers and Scientists of California and public safety organizations—including the California Association of Highway Patrolmen and the California Professional Firefighters— oppose Proposition 35.

PROPOSITION 35 WILL DELAY CONSTRUCTION OF NEW CLASSROOMS NEEDED TO REDUCE CLASS SIZE AND IMPROVE EDUCATION. That's why educators, including school districts throughout California and the California School Employees Association, oppose Proposition 35. PROPOSITION 35 WILL DELAY CONSTRUCTION OF HEALTH CARE FACILITIES, increasing the cost of health care. That's why health care professionals and seniors groups—including the California Nurses Association and the Congress of California Seniors—oppose Proposition 35.

Jon Coupal, President of the HOWARD JARVIS TAXPAYERS ASSOCIATION, says "Taxpayers should be very concerned with this proposal and its potential costs. We urge voters to vote NO on Proposition 35."

Don't let a few huge, greedy corporations mislead you into voting to change the Constitution to give them a special exemption so they can waste your tax dollars! Please join with the Howard Jarvis Taxpayers Association, the California Tax Reform Association, the Consumer Federation of California, the California Small Business Roundtable, law enforcement, firefighters, teachers, seniors, nurses, labor and many, many others who OPPOSE PROPOSITION 35.

VOTE NO ON PROPOSITION 35!

JEFF SEDIVEC, President
California State Firefighters' Association
LOIS WELLINGTON, President
Congress of California Seniors
MARLAYNE MORGAN
Engineers and Scientists of California

Analysis by the Legislative Analyst

Argument in Favor of Proposition 35

Rebuttal to Argument in Favor of Proposition 35

Argument Against Proposition 35

Rebuttal to Argument Against Proposition 35

# 35

# PUBLIC WORKS PROJECTS. USE OF PRIVATE CONTRACTORS FOR ENGINEERING AND ARCHITECTURAL SERVICES.

Rebuttal to Argument Against

## Rebuttal to Argument Against Proposition 35

They're at it again. The CALTRANS BUREAUCRATS WHO ARE BANKROLLING THE CAMPAIGN AGAINST PROP. 35 will stop at nothing.

First they filed lawsuits to terminate government's ability to contract with private sector architects and engineers. Then they brought more lawsuits to deny you the opportunity to vote on Prop. 35.

Now that it's on the ballot, those same bureaucrats are using their political allies in Sacramento and discredited studies to try to deceive you.

We invite you to read Prop. 35 yourself. IT'S THE MOST STRAIGHTFORWARD INITIATIVE ON THE BALLOT.

Prop. 35 will simply restore the ability of state and local government to use qualified private sector engineers and architects where it makes sense to do so—something many other states do already.

PROP. 35 DOESN'T CREATE ANY NEW COMPLICATED REGULATIONS OR DELAYS. On the contrary, it restores the public/private partnerships needed to speed up the delivery of thousands of backlogged public works projects. That's precisely why hundreds of local governments, schools, transportation agencies, engineers, earthquake safety experts and more than a dozen taxpayer groups URGE A YES VOTE ON PROP. 35.

Working together, the public and private sectors can GET THE JOB DONE SOONER, SAFELY and MORE EFFICIENTLY.

It's a simple question really:

• If you want to preserve the Caltrans status quo of delays, vote no.

• If you want to see the PUBLIC AND PRIVATE SECTORS WORKING TOGETHER to speed up project delivery, SAVE taxpayers $2.5 BILLION ANNUALLY and create 40,000 new jobs . . . VOTE YES on PROP. 35.

MIKE SPENCE, President
California Taxpayer Protection Committee
RON HAMBURGER, President
Structural Engineers Association of California
MICHAEL E. FLYNN, President

Taxpayers for Fair Competition—a coalition of taxpayers, engineers, seniors, schools, local government, business, labor, highway safety experts and frustrated commuters.

Analysis by the Legislative Analyst

Argument in Favor of Proposition 35

Rebuttal to Argument in Favor of Proposition 35

Argument Against Proposition 35

Rebuttal to Argument Against Proposition 35